```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF KANSAS


DELOIS HOLT,                         )
                                     )
               Plaintiff,            )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 08-2410-KHV-GBC
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
               Defendant.            )
_____)
```

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  Finding the Commissioner erred as a matter of law in evaluating plaintiff's mental impairments, in evaluating the medical opinion of Dr. Koduri, and in evaluating plaintiff's past relevant work at step four of the sequential evaluation process, the court recommends the decision be REVERSED and the case be REMANDED for further proceedings.

**I.   Background**

Plaintiff's applications were denied initially and upon reconsideration, and plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 23). Plaintiff's request was granted, and a hearing was held at which plaintiff was represented by a non-attorney representative. Id. Testimony was taken from plaintiff and from a vocational expert. Id. Thereafter, ALJ Linda L. Sybrant issued a decision finding that plaintiff is able to perform her past relevant work as a mail clerk and is not disabled within the meaning of the Act, and denied plaintiff's applications. (R. 23-33).

Plaintiff sought, but was denied review by the Appeals Council. (R. 16-18). Therefore, the ALJ's decision is the final decision of the Commissioner. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

**II. Legal Standard**

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla but less than a preponderance,

it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520,

416.920 (2007); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the sequential evaluation process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show

other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ failed to give appropriate weight to the medical opinions of treating physicians, Drs. Shah and Koduri, and of nontreating psychologist, Dr. Swearngin; failed to properly assess plaintiff's physical and mental RFC; and failed to make findings at step four of the sequential evaluation process regarding the physical and mental demands of plaintiff's past relevant work as a mail clerk.  The Commissioner argues that the ALJ properly assessed plaintiff's RFC including proper consideration of all of the medical opinions of record, relying upon the opinions of nontreating sources Drs. Bratt and Fortune, and of treating physician Dr. Trueblood, while giving adequate reasons to discount the opinions of Drs. Shah, Koduri, and Swearngin.  He also argues that the ALJ properly determined plaintiff could return to her past relevant work as a mail clerk. The court addresses the issues in the order they would be reached in applying the sequential evaluation process.

**III. Evaluation of Medical Opinions Between Steps Three and Four**

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  They

may not be ignored and, unless a treating source[1] opinion is given controlling weight, <u>all</u> medical opinions will be evaluated by the Commissioner in accordance with certain regulatory factors.  <u>Id.</u> §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2009).  Those factors are: (1) length of treatment relationship and frequency of examination; (2) nature and extent of the treatment relationship, including treatment provided and the examination or testing performed; (3) degree to which the physician's opinion is supported by evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1301 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see also</u> <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001).

A physician who has treated a patient frequently over an extended period of time is expected to have greater insight into

---

[1] The regulations define three types of medical sources:
  "Treating source:"  a medical source who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
  "Nontreating source:"  a medical source who has examined the claimant, but never had a treatment relationship.  <u>Id.</u>
  "Nonexamining source:"  a medical source who has not examined the claimant, but provides a medical opinion.  <u>Id.</u>

the patient's medical condition. Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

If a treating source opinion is not given controlling weight, it is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Watkins, 350 F.3d at 1301. After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996)).

As the parties' arguments suggest, the ALJ weighed the medical opinions of six medical sources. (R. 28-32). She

weighed the opinions of three treating sources:  Dr. Trueblood, a psychiatrist who treated plaintiff three times in 2005; Dr. Shah, a psychiatrist who began treating plaintiff on February 1, 2006; and Dr. Koduri who began treating plaintiff in 2001 and provided an opinion regarding plaintiff's limitations in July, 2005.  She also weighed the opinions of three nontreating sources:  Dr. Fortune, a physician who performed a consultant examination in November, 2004 and provided a report regarding plaintiff's physical impairments, abilities, and limitations; Dr. Swearngin, a psychologist who performed a consultant examination in November, 2004 and provided a report regarding plaintiff's mental impairments, abilities, and imitations; and Dr. Bratt, a psychologist who performed consultant examinations in May, 2007 and August, 2007, and provided reports each time regarding plaintiff's mental impairments, abilities, and limitations.

With the exception of Dr. Koduri's treatment, the ALJ summarized the treatment and examination provided by each medical source listed above.  (R. 28-32).  She discussed in at least general terms the relative weight given each opinion.  Id.

Plaintiff does not claim that the medical opinions of Drs. Shah and Koduri should have been given controlling weight, and given the conflicting medical opinions, the ALJ was correct in not assigning controlling weight to the treating source opinions. SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp.

2009)(Controlling weight is not given when the ALJ finds in the record "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion."). Plaintiff claims the ALJ did not give "appropriate weight" to the opinions of Drs. Shah, Koduri, and Swearngin; points to record evidence tending to support the doctors' opinions; and explains why, in her view, the ALJ's analysis relied upon insufficient and relatively minor evidence in assessing the weight assigned. (Pl. Br. 35-43). For his part, the Commissioner argues that the ALJ properly relied upon the opinions of Drs. Bratt, Fortune, and Trueblood, and gave adequate reasons to discount the opinions of Drs. Shah, Koduri, and Swearngin, and points to evidence tending to support the ALJ's evaluation. (Comm'r Br. 17-24).

As the parties' arguments suggest, there is record evidence supporting both views. However, the court may not reweigh the evidence, and may not substitute its judgment for that of the Commissioner. Hackett, 395 F.3d at 1172; White, 287 F.3d at 905; Casias, 933 F.2d at 800. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would

justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084(citations, quotations, and bracket omitted); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)).

However, this conclusion does not end the matter. As noted above, the ALJ summarized the treatment and examination provided by each medical source except Dr. Koduri. The ALJ's entire discussion regarding Dr. Koduri's treatment and medical opinion is repeated here:

> The undersigned has also considered the report of Dr. Koduri (C12F) that described a greater level of physical limitation than found by the Administrative Law Judge. Little weight can be given to this report in light of the minimally abnormal medical signs and findings and lack of consistent, ongoing treatment. It is noteworthy that Dr. Koduri did not provide a specific explanation for the limitations he assessed and that there is no objective evidence to support limitations other than an x-ray of the claimant's hip.

(R. 32). Although the ALJ cited exhibit C12F in her analysis, the court notes that exhibit is a "fill-in-the-blank' report dated June 14, 2005 and completed at the request of the Kansas Rehabilitation Services. There is nothing in the decision which explains the basis for the ALJ's assertions of "minimally abnormal medical signs and findings and lack of consistent ongoing treatment." The ALJ's assertion that "there is no objective evidence to support" Dr. Koduri's limitations provides no citation to Dr. Koduri's treatment records, and there is no

-10-

specific discussion of Dr. Koduri's treatment records in the decision to which the court may refer in an attempt to determine whether the ALJ's findings are supported by substantial evidence. Remand is necessary for the Commissioner to properly evaluate Dr. Koduri's opinion and treatment notes and to explain how the record evidence supports his evaluation.

**IV.   Residual Functional Capacity Assessment**

Plaintiff claims the ALJ's RFC assessment does not account for all of her physical and mental limitations.  She argues the ALJ did not specifically discuss the limitations resulting from her physical impairments of arthritis, carpal tunnel syndrome, gout, lower extremity swelling, or breathing problems.  (Pl. Br. 46-47).  With regard to her mental RFC, plaintiff argues that although the ALJ rated the severity of plaintiff's mental impairments in the four broad areas of mental functioning as required by the Commissioner's psychiatric review technique, she did not explain her conclusions regarding mental limitations or explain how the evidence supports the mental limitations assessed.  Id. at 47.  She also argues without citation to the record that her symptoms are exacerbated by stress, and that the ALJ did not consider plaintiff's response to stress in the decision.  Id. at 47-48.  The Commissioner addressed the alleged failure to discuss certain physical impairments, explains how the ALJ treated each impairment or why the impairment need not have

been discussed, and concluded, "The ALJ considered all of the evidence of record in this case, and assigned significant physical and mental limitation," and "Substantial evidence supports her determination." (Comm'r Br. 23-25).

Plaintiff has the burden of proof through step four of the sequential evaluation process, and it is her burden to prove limitations resulting from her impairments which would have an impact on her ability to perform work activities. She must show more than the mere presence of an impairment. Here, she argues that she has had difficulty with, has been diagnosed with, or has been treated for each of the physical impairments alleged in her brief. Yet, the only evidence of work-related <u>limitations or restrictions</u> presented in her brief is her testimony, an essentially illegible prescription written by Dr. Koduri in 2001 (R. 385)(stating "No . . . repetitive moves"),[2] and Dr. Rice's statement in 1991 that "I think she is going to need to seek employment that does not involve repetitive use of her hands." (R. 169). Plaintiff's testimony is of no evidentiary weight because the ALJ found her testimony not credible, and plaintiff does not contest that finding. (R. 28). Dr. Rice's statement is well outside of the relevant period here, plaintiff worked for

---

[2]Although the date of the prescription is illegible, it appears in the treatment record between treatment notes dated April 17, and April 20, 2001, and the April 17 treatment note refers to arm and hand pain related to carpal tunnel. (R. 384-86).

many years after the statement was made, and plaintiff had successful carpal tunnel surgery in 1999.  Dr. Koduri's April, 2001 prescription is also outside the relevant period for disability allegedly beginning December 1, 2002, but might be of some value in assessing plaintiff's abilities.  However, plaintiff does not explain how it is relevant or how it was error for the ALJ to overlook this one illegible prescription prepared before the relevant time period and contained in an 804-page record.  The court finds no error in the ALJ's assessment of plaintiff's physical RFC.

With regard to the mental RFC assessment, however, the court finds the ALJ erred in failing to apply the correct legal standard.  As plaintiff admits, the ALJ assessed the severity of plaintiff's mental impairments in the four basic mental functional areas in accordance with the psychiatric review technique, and found that plaintiff has "no restrictions in activities of daily living, mild to moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation."  (R. 26).  The ALJ found that plaintiff's mental impairments do not meet or equal any listed mental impairment, noted that the step two and three severity evaluation is not an RFC assessment as required at step four and five, and stated that she had "translated the above "B" and "C" criteria

findings into work-related functions" in her RFC assessment. (R. 26)(citing SSR 96-8p). The ALJ then stated plaintiff's mental RFC: "She is capable of simple, routine, unskilled work and is moderately limited in interacting with the general public."

It is in the "translation" of mild to moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, and pace into the capability of simple, routine, unskilled work with a moderate limitation in interacting with the public where the court discerns error. From the decision it appears that all of this "translation" took place in the ALJ's mind, and as plaintiff argues, the ALJ did not explain her conclusions or explain how those conclusions are supported by the evidence. Specifically, the ALJ did not explain how the evidence establishes that the "B" and "C" criteria findings in this case equate to precisely the mental functional limitations assessed, and none other.

As the ALJ suggested, the Commissioner has explained the difference between the task of evaluating the severity of mental impairments at steps two and three based upon the broad mental functional areas identified in the psychiatric review technique and that of assessing mental RFC. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2009). "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various

functions contained in the broad categories found in" the four functional areas.  Id.  RFC must be expressed in terms of specific work-related functions.  Id. at 148.  "Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."  Id. at 149.  Therefore, an ALJ should not state a mental RFC in terms of the four mental functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.

Here, the ALJ purported to "translate" the severity evaluation at step two and three into an RFC stated as limitations in work-related mental activities useful at step four and five.  However, she did not explain her function-by-function assessment of each of the work-related mental activities, and did not explain how the record evidence requires or supports the limitations assessed.  SSR 96-8p includes a narrative discussion requirement in the RFC assessment.  Id. at 149.  The discussion is to cite specific medical facts to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform.  Id.  The

discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved.  Id.  It is this discussion which is missing from the decision in this case.  Remand is necessary for the Commissioner to properly consider the work-related mental activities, explain how any ambiguities and inconsistencies were considered and resolved, and cite specific medical facts to describe how the record evidence supports each conclusion.

The Social Security Administration has promulgated a special form to document a mental residual functional capacity decision-- Form SSA-4734-F4-SUP.  Program Operations Manual System (POMS) DI 24510.060, Mental Residual Functional Capacity Assessment.  Section I of that form consists of a worksheet "to aid in deciding the presence and degree of functional limitations and the adequacy of documentation" regarding twenty mental functions grouped under four main categories.  Id.  After completing the worksheet in Section I, the medical consultant is to provide his mental RFC assessment in narrative format in Section III of the form.  Id.

Although there is no requirement that an ALJ complete a Mental RFC Assessment form, she is required to document application of the psychiatric review technique in her decision, 20 C.F.R. §§ 404.1520a(e), 416.920a(e), and reference to the worksheet in Section I of the form may aid in ensuring the

adequacy of her documentation and explanation of how the evidence supports the assessment of each mental function.

## V.   Step Four Evaluation

In her final argument, plaintiff claims the ALJ did not make specific findings regarding the physical and mental demands of plaintiff's past relevant work as a mail clerk as required by SSR 82-62 and the court's holding in Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  The Commissioner argues that the ALJ "indicated that she compared Plaintiff's residual functional capacity with the physical and mental demands of this work, and found that Plaintiff was able to perform this job."  (Comm'r Br. 25).  He argues that in any case the vocational expert (VE) testified that a person with the age, education, work experience, and RFC of plaintiff could perform other jobs in the economy and therefore, "Plaintiff would have been found 'not disabled' even if the ALJ proceeded to step five."  Id. at 26.

As plaintiff argues, at step four of the sequential evaluation process, an ALJ is required to make specific findings in three phases.  Winfrey, 92 F.3d at 1023; SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809, 813 (1983).  In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations."  Winfrey, 92 F.3d at 1023.  In phase two of step four, the ALJ must "make findings regarding the physical and mental demands of the claimant's past

-17-

relevant work." <u>Winfrey</u>, 92 F.3d at 1024. In phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." <u>Id.</u>, 92 F.3d at 1023. These findings are to be made on the record by the ALJ. <u>Id.</u> at 1025; <u>see also</u>, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The court reproduces the ALJ's entire discussion of plaintiff's past relevant work as a mail clerk:

> The vocational expert testified that the claimant is capable of performing past relevant work as a mail clerk. In light of the vocational expert testimony in response to a hypothetical question setting forth the above residual functional capacity assessment, the undersigned finds that this work does not require the performance of work-related activities precluded by claimant's residual functional capacity.

(R. 32). The decision contains neither discussion nor finding regarding the physical or mental demands of work as a mail clerk. The VE testified that work as a mail clerk "is classified as unskilled and light." (R. 797). She also testified that a person with plaintiff's RFC limitations would be able to perform work as a mail clerk. (R. 798-99). She did not testify as to the <u>specific</u> demands of work as a mail clerk.

Thus, it appears the ALJ in this case fell into the very practice which the <u>Winfrey</u> court sought to discourage--she delegated the step four fact-finding responsibility to the VE.

-18-

Winfrey, 92 F.3d at 1025. The court explained the evil in this practice:

> When, as here, the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review...a VE may supply information to the ALJ at step four about the demands of the claimant's past relevant work...[but] the VE's role in supplying vocational information at step four is much more limited than his role at step five... Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work.

Id. at 1025.

The ALJ erred in failing to make specific, on-the-record findings regarding the physical and mental demands of plaintiff's past relevant work as a mail clerk, and the case must be remanded for a proper consideration and explanation.

As the Commissioner's brief implies, where an ALJ errs at step four but makes a proper alternative finding at step five that a significant number of jobs which plaintiff can perform are available in the economy, any step four error is harmless, and the decision will be affirmed. Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994). The problem with the Commissioner's argument in this case is two-fold. First, the ALJ made her decision at step four and did not make an alternative step-five finding. Second, the court may not accept counsel's post hoc rationalization and affirm the decision on a basis other than

that presented in the Commissioner's decision. <u>SEC v. Chenery Corp.</u>, 318 U.S. 80 (1943); <u>see also</u>, <u>Grogan v. Barnhart</u>, 399 F.3d 1257, 1263 (10th Cir. 2005)(reviewing court may not create post hoc rationalization); <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004)(decision evaluated based solely on rationale provided therein); <u>Knipe v. Heckler</u>, 755 F.2d 141, 149 n.16 (10th Cir. 1985)(decision may not be affirmed on basis of appellate counsel's post hoc rationalizations).

**IT IS THEREFORE RECOMMENDED** that the decision be REVERSED and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>6th</u> day of October 2009, at Wichita, Kansas.

                                            **s:/ Gerald B. Cohn**
                                            **GERALD B. COHN**
                                            **United States Magistrate Judge**